**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
In re:

EMPIRE ONE TELECOMMUNICATIONS, INC.,
a/k/a EOT,

                                Debtor.

--------------------------------------------------------------------x
EMPIRE ONE TELECOMMUNICATIONS, INC.,
a/k/a EOT,

                                Plaintiff,

     -against-

T-MOBILE USA, INC.,

                                Defendant.

--------------------------------------------------------------------x

Chapter 11

Case No. 10-10987 (ALG)

Adv. Pro. No. 10-04234 (ALG)

## <u>MEMORANDUM OF OPINION</u>

A P P E A R A N C E S :

GOLDBERG & RIMBERG, PLLC
*Attorneys for Plaintiff*
  By:   Robert L. Rimberg, Esq.
        Joel S. Schneck, Esq.
        Steven A. Weg, Esq.
115 Broadway, Suite 302
New York, New York 10006

ALSTON & BIRD LLP
*Attorneys for Defendant*
  By:   John W. Weiss, Esq.
90 Park Avenue
New York, New York 10016

  By:   Kristine M. Brown, Esq.
        Sage M. Sigler, Esq.
1201 W. Peachtree Street
Atlanta, Georgia 30309

  By:   Marianne Roach Casserly
950 F Street NW
Washington, D.C. 20004

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is a motion filed by defendant T-Mobile USA, Inc. ("T-Mobile") to

dismiss the amended complaint of plaintiff Empire One Telecommunications, Inc. ("EOT"), the

debtor in the above-captioned chapter 11 case. EOT is a competitive local exchange carrier

("LEC"), T-Mobile is a commercial mobile radio service ("CMRS") carrier, and EOT seeks

compensation for having terminated calls that T-Mobile customers made to EOT customers. In

its first amended complaint, dated May 27, 2011 (the "Complaint"), EOT asserts claims for

compensation based on four theories: (1) account stated, (2) unjust enrichment, (3) failure to pay

for goods and services delivered, and (4) prima facie tort. T-Mobile moves to dismiss for lack of

subject-matter jurisdiction, pursuant to Rule 12(b)(1), asserting that EOT's earlier submission of

an informal claim to the Federal Communications Commission ("FCC" or "Commission")

precludes a lawsuit based on the same issues due to an election of remedies provision in the

governing statute. T-Mobile also asserts that the complaint fails to state a claim upon which

relief can be granted and should be dismissed pursuant to Rule 12(b)(6). For the reasons set forth

below, the motion to dismiss for lack of subject-matter jurisdiction is granted and, accordingly,

the Court does not reach the 12(b)(6) issues.

## Background

The facts alleged in the Complaint are assumed to be true for purposes of this decision.

Additional facts from outside the pleadings are also relied on, as is appropriate on a Rule

12(b)(1) motion, but in any event none of the essential facts is contested. *Makarova v. United*

*States*, 201 F.3d 110, 113 (2d Cir. 2000), citing *Kamen v. Amer. Tel. & Tel. Co.*, 791 F.2d 1006,

1011 (2d Cir. 1986).

EOT voluntarily filed a prior petition under chapter 11 of the Bankruptcy Code on July 24, 2001, ultimately confirming a plan of reorganization. That first case was closed on July 11, 2005. On February 25, 2010, EOT filed a second voluntary petition for relief under chapter 11, continuing to operate its business as a debtor in possession. It filed a plan of reorganization that was confirmed on February 28, 2011, but the plan has not yet been consummated.

On May 26, 2009, after emerging from its first bankruptcy but before filing the instant case, EOT filed an informal complaint (the "Informal FCC Complaint") with the FCC asserting claims against T-Mobile. The Informal FCC Complaint included allegations (i) that "T-Mobile is refusing to pay EOT for both intra and inter-MTA traffic that T-Mobile has terminated to EOT numbers" and (ii) that T-Mobile was evading its payment obligations by making it appear that interMTA traffic was intraMTA -- "Local" or "non-access" -- traffic.[1] *Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint*, Ex. 1 at 5-6, 10 [Dkt. No. 32] (attaching the Informal FCC Complaint). The Informal FCC Complaint further asserted (i) that "T-Mobile refuses to negotiate for an interconnection agreement with EOT in good faith"[2] and

---

[1] In general, non-access ("local") call traffic is traffic originated and terminated on the same hardwire exchange; non-access calls are not subject to access charges, i.e., tariffs. Access ("long-distance") traffic is traffic that must be routed onto another exchange to be completed, and such calls are subject to tariffs. MTAs are "major trading areas" in telecommunications terminology, geographical units that do not faithfully track either state lines or exchange areas. Since CMRS ("cellular") carriers, like T-Mobile, transmit their calls via radio waves rather than over exchanges, the relevant geographical areas for classifying calls as essentially "local" or "long-distance" are MTAs. *See* 47 C.F.R. § 24.202 (adopting the MTA system). The characterization of the call traffic at issue here as access or non-access is disputed based on, *inter alia*, whether the FCC's recent decision in *In re South Seas Broad., Inc.*, 26 FCC Rcd. 4164 (2011), extends to cellular traffic under all circumstances. *South Seas* holds that CMRS calls are not "interexchange" calls within the meaning of 47 U.S.C. § 254(g) and thus are not subject to the rate integration requirements of that section. T-Mobile argues that this definitional interpretation should be applied consistently throughout the Act and that, since CMRS calls are not "interexchange," all cellular traffic is non-access and not subject to tariffs. The Court does not reach the issue.

[2] An interconnection agreement would govern payment by T-Mobile for EOT's services and replace any statutory or other payment obligations with contractual ones. *See In re Developing a Unified Intercarrier Compensation Regime*, 20 FCC Rcd. 4855, 4863 (2005) ("2005 T-Mobile Decision"), adopting 47 C.F.R. § 20.11(d), which prohibits the use of tariffs as a default rate of compensation for non-access call traffic, "to make clear [the FCC's] preference for contractual arrangements for non-access CMRS traffic."

(ii) that EOT was "entitled to invoice T-Mobile USA for Local [(non-access)] traffic based on 47

C.F.R. § 20.11(b)(2)…." Ex. 1 at 6, 11. The relief requested was as follows:

> EOT is requesting that the FCC direct T-Mobile to (a) route all Access Traffic
> destined to EOT to the appropriate Verizon Access Tandem, (b) continue the
> negotiations that T-Mobile initiated in July 2007 and supply EOT with a draft non
> bill-and-keep interconnection agreement…, and (d) pay the invoices submitted by
> EOT to T-Mobile.

Ex. 1 at 15.

There were some developments over the next several months relating to the Informal

FCC Complaint, including a response by T-Mobile required under FCC rules. Then, by letter

dated November 18, 2009, the FCC advised EOT that it had reviewed the Informal FCC

Complaint, T-Mobile's response, and other correspondence between the parties and was closing

the file without further action. *Declaration of Steven A. Weg*, Ex. 1 [Dkt. No. 37] (attaching the

FCC's letter). The FCC also advised that EOT could convert the Informal FCC Complaint into a

formal one if it was not satisfied with this disposition, but that such action would have to be

taken by January 4, 2010. After that date, the Informal FCC Complaint would be deemed

abandoned. EOT chose not to pursue the formal complaint process. *Memorandum of Law in

Opposition to Defendant's Motion to Dismiss the Complaint* 4 [Dkt. No. 36].

EOT initiated this adversary proceeding by filing a four-page complaint on November 16,

2010 (the "Initial Complaint"), alleging two counts against T-Mobile. [Dkt. No 1]. The first

count was for an account stated, and the second was for unjust enrichment. T-Mobile filed a

motion to dismiss the Initial Complaint on January 18, 2011. [Dkt. No. 6]. After a hearing on

April 12, 2011, the Court granted T-Mobile's motion, without prejudice to repleading. *Order

Granting Defendant's Motion to Dismiss the Complaint* (April 21, 2011) [Dkt. No. 28]. At the

April 12 hearing, the Court found in substance that the abbreviated complaint, which did not

even attach the invoices on which the account stated claim was based, was insufficient. EOT

then filed the instant Complaint on May 27, 2011. [Dkt. No. 29].

The essence of EOT's allegations is that T-Mobile is indebted to EOT because calls from

the T-Mobile network were terminated to numbers serviced by EOT, that is, EOT put calls from

T-Mobile customers through to its own customers without being paid for doing so. EOT alleges

that "T-Mobile was attempting to avoid paying for non-local or 'Access' traffic termination as

the traffic was essentially masked to appear as intra-MTA traffic." *Amended Complaint* ¶ 14.

EOT also describes the same interconnection agreement negotiation as addressed in the Informal

FCC Complaint, *id.* ¶¶ 66-87, and it again asserts that the source of T-Mobile's obligation to pay

is 47 C.F.R. § 20.11, *id.* ¶¶ 43-50.

The damages sought are for calls during the period starting January 1, 2007 and ending

June 30, 2010 based on various state common law theories. EOT invoiced T-Mobile for all

traffic in that period, sending out the first bill on February 17, 2009. *See Amended Complaint*,

Ex. A (including invoices for "local," "intrastate," and "interstate" calls). EOT uses the

outstanding balance due on or before July 16, 2010 as the measure of damages requested for

each of the four counts. *Id.* ¶¶ 95, 107, 113, 120. All of the invoices include charges for "local"

and "interstate" traffic, which presumably refers respectively to intrastate, intraMTA calls, and to

interstate, interMTA calls. EOT suspended "intrastate" (intrastate, interMTA) service to T-

Mobile on August 31, 2009 and ceased associated billing. *Id.* ¶ 80. Although the Complaint

asserts that T-Mobile acted in bad faith, it does not contain a damage claim based thereon. *See id.*

¶¶ 66-87; *Memo in Opposition* 14 ("T-Mobile's argument is contrary to clear orders and

directives of the FCC and is a bad faith attempt to avoid paying over $1,400,000 owed to

EOT."); *id.* at 25 ("At all times, T-Mobile has conducted itself in bad faith….").

T-Mobile responded to the Complaint with the instant motion to dismiss on July 1, 2011.
[Dkt. No. 31]. It argues that EOT impermissibly used tariffs to calculate the invoiced amounts,
that a complex structure of rights and obligations exists between the parties, and that it is
disputed whether the fees for access or non-access calls should apply to the T-Mobile traffic. *See
supra* note 1. Prior to reaching the merits, T-Mobile further asserts, the Court should dismiss for
lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) based on EOT's prior informal complaint
to the FCC. Since the motion to dismiss for lack of jurisdiction is well-founded, it is the only
issue that need be addressed.

**Discussion**

**A.**    **Legal Standard**

A motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1),
made applicable by Bankruptcy Rule 7012(b), may be raised by any party or by a court *sua
sponte*. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Subject-matter jurisdiction refers to
"prescriptions delineating the classes of cases…falling within a court's adjudicatory authority."
*Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). "If the court determines at any time that it lacks
subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The plaintiff bears the burden of establishing by a preponderance of the evidence that the
court has subject-matter jurisdiction. *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "A court
must accept the material factual allegations in the complaint as true, but need not draw inferences
favorable to the plaintiff." *Penthouse Media Group v. Guccione (In re Gen. Media, Inc.)*, 335
B.R. 66, 71-72 (Bankr. S.D.N.Y. 2005), citing *J.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d
Cir. 2004). In addition, materials outside the pleadings may be considered on a Rule 12(b)(1)

challenge without converting the motion into one for summary judgment. *Makarova*, 201 F.3d at

113, citing *Kamen*, 791 F.2d at 1011.

**B.      Election of Remedies Pursuant to 47 U.S.C. § 207**

Section 207 of the Communications Act of 1934 (as amended, the "Act"), 47 U.S.C. §

207, provides:

> Any person claiming to be damaged by any common carrier subject to the
> provisions of this chapter may either make complaint to the Commission as
> hereinafter provided for, or may bring suit for the recovery of the damages for
> which such common carrier may be liable under the provisions of this chapter, in
> any district court of the United States of competent jurisdiction; but such person
> shall not have the right to pursue both such remedies.

Section 207 thus plainly provides that an aggrieved party may "make complaint to the

Commission" *or* "may bring suit for the recovery of damages," and it concludes, "but such

person shall not have the right to pursue both such remedies."

Based on this language, the courts have uniformly held that filing a complaint with the

FCC divests a court of jurisdiction to hear a subsequent lawsuit asserting claims raised in the

FCC complaint. It makes no difference that the FCC complaint was allegedly abandoned or that

the FCC failed to act on it. *Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683,

689 (5th Cir. 2006) (rejecting the argument that voluntary dismissal of an FCC complaint prior to

decision "un-files" it and opens the courts to a plaintiff notwithstanding § 207); *Bell Atl. Corp. v.

MFS Commc'ns Co.*, 901 F. Supp. 835, 852-53 (D. Del. 1995) (rejecting the argument that forum

choice is "reset" by FCC inaction). It also makes no difference that the earlier complaint was an

informal complaint that was never converted into a formal proceeding before the FCC. In

*Digitel, Inc. v. MCI WorldCom, Inc.*, 239 F.3d 187 (2d Cir. 2001), the plaintiff sent an enraged

letter to the FCC, which was treated as an informal complaint, approximately one month before

filing suit in federal court on statutory, tariff, and federal common law claims. *Id.* at 189.

Although the letter was sent *pro se* and was more of a rant than a legal document, the Second Circuit affirmed the District Court's order that, under § 207, the letter divested the court of jurisdiction over the subsequent federal court action. The Court concluded that pursuit of the FCC's informal complaint process constitutes an election of the FCC as the exclusive forum in which to adjudicate a claim. *Digitel*, 239 F.3d at 190; *accord*, *Premiere Network*, 440 F.3d at 688 ("[O]nce an election is made either by filing a complaint with the FCC or filing a complaint in federal court, a party may not thereafter file a complaint on the same issues in the alternative forum, regardless of the status of the complaint."); *Mexiport, Inc. v. Frontier Commc'ns Servs., Inc.*, 253 F.3d 573, 575 (11th Cir. 2001).

The principal issue in determining whether a subsequent lawsuit is barred because of an earlier filing with the FCC is whether there is "a nexus between the claims in the two forums that is sufficient to bring § 207 into play." *Digitel*, 239 F.3d at 191. A complete identity of issues is not required; § 207 will divest a court of jurisdiction so long as the claims in the complaint and those raised previously before the FCC share a "nexus." *Id.* The Second Circuit in *Digitel* found a common nexus because the "complaints to the FCC and in the district court plainly ar[o]se out of the same facts…and [the plaintiff] ha[d] failed to identify any substantial distinction between its two actions." *Id.*; *see also Beehive Tel. Co. v. Sprint Commc'ns Co.*, No. 2:08-CV-00380, 2009 WL 3297303, at *2 (D. Utah Oct. 13, 2009). Thus, § 207 requires dismissal of the Complaint unless EOT's claims in the Informal FCC Complaint and in the Complaint are substantially distinct, that is, unless they lack a nexus. *See Premiere Network*, 440 F.3d at 691 (finding no nexus where "earlier arguments before the FCC and the contract allegations set forth in the district court complaint 'arise[ ] out of distinct disputes.'" (quoting *Digitel*, 239 F.3d at 191)).

8

The causes of action in the Informal FCC Complaint and in the Complaint have a strong and clear common nexus and arise out of a single factual dispute concerning compensation by T-Mobile for calls terminated on EOT's facilities. Both complaints detail allegations of EOT's attempts to collect invoiced amounts from T-Mobile, EOT's frustration in its inability to negotiate an interconnection agreement with T-Mobile, and T-Mobile's alleged improper routing of interMTA (access) traffic onto intraMTA (non-access) network facilities. All of EOT's claims "plainly arise out of the same facts." *Digitel*, 239 F.3d at 191. The two complaints do not describe sets of circumstances sufficiently distinct to avoid what § 207 is intended to prevent: "duplicative adjudications and inconsistent results between [a federal court] and the FCC" and "giving a complaining party several bites at the apple through dismissal and re-filing of complaints…." *Premiere Network*, 440 F.3d at 688 (quotation marks omitted), quoting *Bell Atl. Corp.*, 901 F. Supp. at 853.

The finding of a nexus is further supported by three additional factors. First, both the Complaint and the Informal FCC Complaint allege that T-Mobile breached an obligation under 47 C.F.R. § 20.11(b)(2). Put another way, the Complaint alleges substantially, if not exactly, the same thing that the Informal FCC Complaint alleged. These are identical claims; under any interpretation of *Digitel*, identical claims share a sufficient nexus to establish an election of remedies under § 207.

Second, the relief requested in the Complaint and the Informal FCC Complaint is the same. The Informal FCC Complaint requested that "the FCC direct T-Mobile to…pay the invoices submitted by EOT to T-Mobile." *Memo in Support*, Ex. 1 at 15. All of the counts in the Complaint use the last invoice balances as the damages sought, invoking the remedy already sought from the FCC in the Informal FCC Complaint.

Third, despite EOT's contention that the its claims in the Complaint amount to no more than a "collection action," regulatory questions are necessarily raised, particularly under 47 C.F.R. § 20.11(b). For example, EOT asks the Court to assume that tariffs apply under § 20.11(b). This raises the question whether the traffic at issue may nevertheless be immune to tariffs. *See* § 20.11(d) (prohibiting local exchange carriers or LECs from charging CMRS carriers pursuant to tariffs for traffic not subject to access charges); *see also In re South Seas Broad., Inc.*, 26 FCC Rcd. 4164 (2011), discussed in note 1, *supra*. A related issue is whether any such bar would apply retroactively if the FCC adopted T-Mobile's argument that *South Seas* renders all cellular traffic non-access in nature. Additionally, the question is raised whether the invoices charge a "reasonable rate" for call termination under 47 C.F.R. § 20.11(b). All of these issues were implicated in the Informal FCC Complaint and are necessarily raised in the Complaint.

EOT finally contends that its lawsuit should not be barred because the FCC never had jurisdiction over the issues raised in the Informal FCC Complaint. If the FCC could not have heard the issues raised in EOT's Informal FCC Complaint, EOT asserts, then EOT could not have forfeited its judicial remedies through an erroneous forum selection.

There is no basis for EOT's assertion of lack of jurisdiction in the FCC. The Act created the FCC to regulate interstate wire and radio communications. 47 U.S.C. § 151. The FCC is authorized under 47 U.S.C. § 208 to adjudicate allegations of breaches of the Act, and it has promulgated regulations establishing procedures for filing both formal and informal complaints. 47 C.F.R. § 1.711-1.736. Liability for consequential damages and attorneys' fees resulting from a breach of the Act is imposed by 47 U.S.C. § 206, and the FCC has the power to award damages

under 47 U.S.C. § 209.[3] *Prima facie*, the FCC has jurisdiction over the issues raised in the

Informal FCC Complaint because they involve interpretation and administration of the Act. *See*

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984); *Ellis v.*

*Tribute Television Co.*, 443 F.3d 71, 81-83 (2d Cir. 2006) (doctrine of primary jurisdiction

allows FCC to resolve issues within its expertise).[4]

Generally, the FCC may entertain claims for unpaid compensation if the Act or a

regulation thereunder "specifically impose[s] an obligation on the 'customer' to pay" and a

complainant alleges a violation of that obligation. *U.S. TelePacific Corp. v. Tel-America of Salt*

*Lake City, Inc.*, 19 FCC Rcd. 24552, 24556 n.28 (2004) (noting that the FCC hears complaints to

recover unpaid payphone charges). The allegations in the Complaint make it clear that EOT

claims a violation of the obligation to pay under 47 C.F.R. § 20.11(b), which governs the

compensation obligations between a CMRS carrier, such as T-Mobile, and an LEC, like EOT.

*See In re Developing a Unified Intercarrier Compensation Regime*, 20 FCC Rcd. 4855, 4862

(2005) ("2005 T-Mobile Decision") ("[S]ection 20.11 and the Commission's reciprocal

compensation rules establish default rights to intercarrier compensation…."). Indeed, the

Complaint makes the specific allegation that 47 C.F.R. § 20.11(b) creates such a right. *Amended*

*Complaint* ¶¶ 43-50. Section 20.11(b)(2) provides that a "[CMRS] provider *shall pay reasonable*

*compensation* to a [LEC] in connection with terminating traffic that originates on the facilities of

the [CMRS] provider." 47 C.F.R. § 20.11(b)(2) (emphasis added); *see also id.* § 20.11(b)(1)

(imposing an identical obligation on LECs to compensate CMRS providers). Furthermore, §

---

[3] These provisions apply to "common carriers." T-Mobile admits that it is regulated as a common carrier under 47 U.S.C. § 332(c)(1)(A) (CMRS carriers generally treated as common carriers). *Memo in Support* 16.

[4] It may be noted that the FCC did not disclaim jurisdiction over EOT's claims when it said that it would not take further action in EOT's informal proceeding. On the contrary, the FCC's letter advising EOT of its right to convert the Informal FCC Complaint into a formal one essentially quotes 47 C.F.R. § 1.718, which provides that a converted complaint must be "based on the same cause of action as the informal complaint."

20.11(b) applies to both local and long-distance traffic. *See MetroPCS Cal., LLC v. FCC*, 644

F.3d 410, 411 (D.C. Cir. 2011) ("Regardless of its source, the receiving LEC must ensure the call

gets to the intended recipient, a service referred to as 'terminating the traffic.' The CMRS must

pay the LEC 'reasonable compensation' for that service."); *AirTouch Cellular v. Pac. Bell*, 16

FCC Rcd. 13502, 13506 (2001). T-Mobile's alleged failure to pay EOT pursuant to § 20.11(b)(2)

therefore presents an issue that could properly be brought before and resolved by the FCC. 47

C.F.R. § 20.11(a) (authorizing the FCC to hear both formal and informal complaints for

violations of § 20.11).[5]

EOT argues that "[g]overning doctrine is squarely of the position that 'an allegation by a

carrier that a customer has failed to pay charges specified in the carrier's tariff fails to state a

claim for violation of any provision of the Act….'" *Memo in Opposition* 4, quoting *All Amer.

Tel. Co. v. AT&T Corp.*, 26 FCC Rcd. 723, 727 (2011). While that proposition may be true, it is

not determinative because EOT has alleged that T-Mobile breached a payment obligation

imposed by 47 C.F.R. § 20.11(b)(2), not exclusively by a tariff. *Amended Complaint* ¶¶ 43-50

(describing § 20.11(b) as the source of T-Mobile's obligation to pay). To support its position that

a breach of the Act is not alleged in the Complaint, and the FCC accordingly has no jurisdiction,

EOT's counsel relies on a string citation found in footnote 32 of the FCC's decision in *All

American Telephone Co.*, which in turn supported a ruling by the FCC that "although a

customer-carrier's failure to pay another carrier's tariffed charges may give rise to a claim in

court for breach of tariff/contract, it does not give rise to a claim at the Commission under

section 208 (or in court under section 206) for breach of the Act itself." *All Amer. Tel. Co.*, 26

FCC Rcd. at 727. In that case, AT&T was sued in its capacity as an interexchange carrier, not a

---

[5] This is not to state whether EOT has pleaded sufficiently to overcome T-Mobile's Rule 12(b)(6) motion.
Rather, the conclusion here is merely that EOT has attempted to allege claims in the Complaint and in the Informal
FCC Complaint under 47 C.F.R. § 20.11(b)(2), a cause of action within the jurisdiction of the FCC.

CMRS carrier, and § 20.11(b) by its terms did not apply, could not have obligated AT&T to pay the complainant, and was not relied on by the parties. Significantly, the FCC noted that its decisions dismissing tariff collection actions for lack of jurisdiction were premised on the fact that "the Act generally governs a carrier's obligations to its customers [when charging tariffs]" but defers to state law to impose obligations to pay those tariffs. *Id.* Here, EOT does not simply allege that T-Mobile failed to pay a governing tariff. Rather, EOT claims that T-Mobile violated an FCC rule that clearly imposes an obligation on T-Mobile to pay EOT "reasonable compensation" and that its tariffs establish such a "reasonable" rate. This is not a straightforward tariff collection case, and the principles underlying the FCC's disclaimer of jurisdiction cases do not apply.

EOT also relies on the FCC's *2005 T-Mobile Decision* as support for the proposition that the FCC does not have jurisdiction over a "collection action," but its reliance is misplaced. The *2005 T-Mobile Decision* only addressed the jurisdictional issue in passing, 20 FCC Rcd. at 4860 n.40, and it did not address violations of or remedies under § 20.11 at all. *North Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1157 n.7 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 645 (2010). There are many cases in which the FCC has entertained § 20.11(b) compensation claims and many cases in which the federal courts have found that the FCC is an appropriate forum for such claims. *See, e.g.*, *id.* at 1156; *North Cnty. Commc'ns Corp. v. MetroPCS Cal., LLC*, 24 FCC Rcd. 3807, 3811 (2009), *aff'd and modified by* 24 FCC Rcd. 14036 (2009), *aff'd by MetroPCS Cal., LLC v. FCC*, 644 F.3d 410 (D.C. Cir. 2011); *MAP Mobile Commnc'ns Inc. v. Ill. Bell Tel. Co.*, 24 FCC Rcd. 5582, 5595-96 (2009). In *MetroPCS*, 644 F.3d 410, for example, the D.C. Circuit described the LEC-CMRS dispute there as one arising "when, in the absence of an agreement, North County unilaterally set a rate and began billing MetroPCS for the cost of

terminating its traffic. MetroPCS refused to pay, and North County filed a complaint with the FCC alleging a violation of Rule 20.11(b)." *Id.* at 411. This aptly describes the dispute in this case and confirms that the FCC had jurisdiction over the issues raised.

### Conclusion

For the reasons set forth above, the motion to dismiss the Complaint for lack of subject-matter jurisdiction is granted. T-Mobile's counsel shall settle an order on three days' notice.

Dated: October 24, 2011
      New York, New York

                              */s/ Allan L. Gropper*
                              UNITED STATES BANKRUPTCY JUDGE